Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD MAMMOSER,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SIGILON THERAPEUTICS, INC.,<br>ROGERIO VIVALDI COELHO, DOUG<br>COLE, JOHN COX, STEPHEN<br>OESTERLE, KAVITA PATEL, ROBERT<br>RUFFOLO, JR., and ERIC SHAFF,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)   Violation of § 14 (e) of the Securities<br>        Exchange Act of 1934<br>(2)   Violation of § 14 (d) of the Securities<br>        Exchange Act of 1934<br>(3)   Violation of § 20(a) of the Securities<br>        Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Donald Mammoser ("Plaintiff"), by and through his attorneys, alleges upon

information and belief, except for those allegations that pertain to him, which are alleged upon

personal knowledge, as follows:

**<u>SUMMARY OF THE ACTION</u>**

1.      Plaintiff brings this stockholder action against Sigilon Therapeutics, Inc. ("Sigilon"

or the "Company")[1] and the Company's Board of Directors (the "Board" or the "Individual

---

[1] "Sigilon," and the "Company," also refer to, and are inclusive of, Sigilon Therapeutics, Inc. and
its wholly owned subsidiary, Sigilon Securities Corporation.

Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Eli Lilly and Company, ("Parent"), through a wholly owned subsidiary, Shenandoah Acquisition Corporation ("Purchaser" collectively with Parent, "Eli Lilly") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 29, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of Sigilon common stock owned, Sigilon shareholders will receive $14.92 per share, plus one contingent value right per share (each, a "CVR"). For each CVR, the shareholder has the right to receive up to three contingent payments for an aggregate of up to $111.64 per CVR upon the achievement of certain specified milestones in accordance with the Contingent Value Rights Agreement. As a result of the consummation of the Proposed Transaction, Sigilon will become an indirect wholly-owned subsidiary of Parent.

3.      Thereafter, on July 13, 2023, Sigilon filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  For instance, the Proposed Transaction indicates that the vast majority of the merger consideration is in the form of a non-guaranteed CVR.

5.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate

benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Sigilon shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Sigilon, provided by Sigilon to the Company's financial advisor Lazard Frères & Co. LLC ("Lazard"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Lazard and provided to the Company and the Board.  Accordingly, this action seeks to enjoin the Proposed Transaction.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.     Plaintiff is a citizen of New York and is a Sigilon stockholder.

9.     Defendant Sigilon, a preclinical stage biotechnology company, develops functional cures for patients with acute and chronic diseases. Sigilon is incorporated under the laws of the State of Delaware and has its principal place of business at 100 Binney Street, Suite 600,

Cambridge, Massachusetts 02142.  Shares of Sigilon common stock are traded on the Nasdaq Stock Exchange under the symbol "SGTX".

10.     Defendant Rogerio Vivaldi Coelho, M.D ("Vivaldi") has been a Director of the Company at all relevant times.  In addition, Vivaldi serves as the President and Chief Executive Officer ("CEO") of the Company.

11.     Defendant Doug Cole, M.D. ("Cole") has been a Director of the Company at all relevant times.

12.     Defendant John Cox ("Cox") has been a director of the Company at all relevant times.

13.     Defendant Stephen Oesterle, M.D. ("Oesterle") has been a director of the Company at all relevant times.

14.     Defendant Kavita Patel, M.D. ("Patel") has been a director of the Company at all relevant times.

15.     Defendant Robert Ruffolo, Jr., Ph.D. ("Ruffolo") has been a director of the Company at all relevant times.

16.     Defendant Michael P. O'Donnell ("O'Donnell") has been a director of the Company at all relevant times.

17.     Defendant Eric Shaff ("Shaff") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 10 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Parent discovers, develops, and markets human pharmaceuticals worldwide.  Parent is a Florida Corporation headquartered at Lilly Corporate Center, Indianapolis,

IN, 46285. Shares of Parent's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "LLY".

20.     Non-Party Merger Sub is an affiliate of Parent created to effectuate the proposed transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24.    Sigilon, a preclinical stage biotechnology company, develops functional cures for patients with acute and chronic diseases. Its lead product candidate is SIG-002 to replace islet cells for the treatment of type 1 diabetes; and SIG-001, which is in Phase I/II clinical trial to prevent bleeding episodes in patients with moderate to severe Hemophilia A. The company is also developing SIG-205, SIG-218, SIG-220, and SIG-005, which are to treat the non-neurological manifestations of mucopolysaccharidosis type 1; and SIG-207 is for treatment of Fabry disease.

25.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid performance.  For example, in the May 9, 2023 press release announcing its 2023 Q1 Financials, the Company noted that it expects that its cash, cash equivalents, and marketable securities as of March 31, 2023 will be sufficient to support its currently anticipated operating expenses and capital expenditure requirements into 2025.

26.    Speaking on these positive results, Company President, CEO, and Defendant Vivaldi stated as follows, "In the first quarter, we prioritized our diabetes program, SIG-002, which we are advancing with Eli Lilly and Company. With Lilly reimbursing us for the costs of our diabetes research and development activities, we are able to advance IND-enabling activities for SIG-002, including non-human primate studies, that we expect to initiate in the second half of this year."

27.    Defendant Vivaldi continued, noting bright future prospects for Sigilon: "I am truly excited about the progress our team has made over the past five years in collaboration with Lilly; this includes successfully differentiating induced pluripotent stem cells into mixed populations of

cell types approximating human islet cells, and importantly, improving the stability and integrity of our spheres to encapsulate these cells. Additionally, with an expected IND submission for SIG-002 in 2024, we have extended our anticipated cash runway into 2025."

28.     These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success by Sigilon.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

29.     Despite this upward trajectory and increasing financial results, the Individual Defendants have caused Sigilon to enter into the Proposed Transaction without providing requisite information to Sigilon stockholders such as Plaintiff.

*The Flawed Sales Process*

30.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.  Moreover, the Recommendation is materially deficient in the information it fails to provide.

31.     The Recommendation Statement describes that each CVR represents a non-tradable contractual right to receive contingent payments in an aggregate amount of up to $111.64 per CVR but does not disclose sufficient information as to why the majority of the merger consideration is not guaranteed.

32.     The Recommendation Statement fails to adequately disclose why a committee of independent board members (the "Special Committee") was only created to run the sales process in October 10, 2022 – months after the Company began seeking strategic alternatives and engaged in discussions with companies, including Parent. Further, the Recommendation Statement should

have disclosed the extent of powers of such a committee in evaluating the Proposed Transaction, including whether that committee was empowered to veto a potential transaction not in the best interest of common shareholders.

33.     The Recommendation Statement also fails to provide adequate information regarding Canaccord Genuity LLC ("Canaccord"), including what specific role this entity had in the sales process as well as the specific amount of consideration paid to or owed to this entity for such services performed.

34.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Eli Lilly, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

35.     The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Eli Lilly, throughout the sales process, if any, would fall away.

36.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

37.     On June 29, 2023, Sigilon and Eli Lilly issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> INDIANAPOLIS and CAMBRIDGE, Mass., June 29, 2023 – Eli Lilly and Company (NYSE: LLY) and Sigilon Therapeutics, Inc. (Nasdaq: SGTX) today announced a definitive agreement for Lilly to acquire Sigilon, a biopharmaceutical company that seeks to develop functional cures for patients with a broad range of acute and chronic diseases.

Since 2018, Lilly and Sigilon have worked together to develop encapsulated cell therapies, including SIG-002, for the treatment of type 1 diabetes. The goal of these therapies is to free patients from constant disease management by sensing blood glucose levels, restoring insulin production and releasing it over the long term.

"Despite significant advancement in treatment for people living with type 1 diabetes, many continue to live with a high disease burden every day," said Ruth Gimeno, Ph.D., group vice president, diabetes, obesity and cardiometabolic research at Lilly. "By combining Sigilon's talent and expertise in cell therapy with the knowledge and skills of Lilly's research and development teams, we will enhance opportunities to create innovative islet cell therapy solutions to improve the care of people living with diabetes."

**Terms of the Agreement**

Under the terms of the definitive agreement, Lilly will commence a tender offer to acquire all outstanding shares of Sigilon for a purchase price of $14.92 per share in cash (an aggregate of approximately $34.6 million) payable at closing, plus one non-tradeable contingent value right ("CVR") per share that entitles the holder to receive up to an additional $111.64 per share in cash, for a total potential consideration of up to $126.56 per share in cash without interest (an aggregate of up to approximately $309.6 million excluding shares held by Lilly).

CVR holders would become entitled to receive the following contingent payments: (i) $4.06 per share in cash, upon first dosing of a specified product in the first human clinical trial; (ii) $26.39 per share in cash, upon first dosing of a specified product in the first human clinical trial for registration purposes; and (iii) $81.19 per share in cash, upon receipt of the first regulatory approval of a specified product. There can be no assurance that any payments will be made with respect to the CVRs.

The transaction is not subject to any financing condition and is expected to close in the third quarter of 2023, subject to customary closing conditions, including that Lilly owns a majority of the outstanding shares of Sigilon's common stock following the tender offer. Following the successful closing of the tender offer, Lilly will acquire any shares of Sigilon it does not already own through a second-step merger at the same consideration as paid in the tender offer. Sigilon's board of directors unanimously recommends that Sigilon's stockholders tender their shares in the tender offer.

Lilly will determine the accounting treatment of this transaction as a business combination or an asset acquisition, including any related acquired in-process research and development charges, according to Generally Accepted Accounting Principles (GAAP) upon closing. This transaction will thereafter be reflected in Lilly's financial results and financial guidance.

*Potential Conflicts of Interest*

38.     The breakdown of the benefits of the deal indicates that Sigilon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Sigilon.

39.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Directors and executive officers | Number of Shares (#) | Cash Consideration for Shares ($) | Maximum Value of CVRs in respect of Shares ($)(I) |
|---|---|---|---|
| Rogerio Vivaldi Coelho | 3,289 | 49,072 | 367,184 |
| Philip Ashton-Rickardt | — | — | — |
| Matthew Paul Kowalsky | 1,013 | 15,114 | 113,091 |
| Sarah Qing Yuan | — | — | — |
| Josias Pontes | 1,095 | 16,337 | 122,246 |
| Douglas G. Cole | — | — | — |
| John Cox | 341 | 5,088 | 38,069 |
| Stephen N. Oesterle | — | — | — |
| Kavita Patel | — | — | — |
| Robert R Ruffolo | — | — | — |
| Eric D. Shaff | — | — | — |
| All executive officers and directors as a group (11 persons) | 5,738 | 85,611 | 640,590 |

40.     In addition, Company insiders, currently own large, illiquid portions of stock options, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name of Executive Officer or Director | Number of Vested Company Stock Options (#) | Cash Consideration for Vested Company Stock Options ($)(1) | Maximum Value of CVRs in respect of Vested Company Stock Options ($)(2) | Number of Unvested Company Stock Options (#) | Cash Consideration for Unvested Company Stock Options ($)(1) | Maximum Value of CVRs in respect of Unvested Company Stock Options ($)(2) | Number of Unvested Company Restricted Stock Units (#) | Cash Consideration for Unvested Company Restricted Stock Units ($)(3) | Maximum Value of CVRs in respect of Unvested Company Restricted Stock Units ($)(2) |
|---|---|---|---|---|---|---|---|---|---|
| Rogerio Vivaldi Coelho | 108,220 | — | — | 74,850 | 26,537 | 3,950,046 | 3,076 | 45,894 | 343,405 |
| Philip Ashton-Rickardt | 7,701 | — | — | 21,912 | 6,634 | 987,456 | — | — | — |
| Matthew Paul Kowalsky | 13,071 | — | — | 24,528 | 9,518 | 1,416,712 | 769 | 11,473 | 85,851 |
| Sarah Qing Yuan | 2,884 | — | — | 15,192 | 6,635 | 987,567 | — | — | — |
| Josias Pontes | 9,021 | — | — | 18,477 | 8,075 | 1,202,028 | 707 | 10,548 | 78,929 |
| Douglas G. Cole | 1,366 | 3,414 | 76,250 | 683 | 4,538 | 76,250 | — | — | — |
| John Cox | 5,639 | 3,414 | 76,250 | 683 | 4,538 | 76,250 | — | — | — |
| Stephen N. Oesterle | 6,322 | 35,504 | 553,288 | 683 | 4,538 | 76,250 | — | — | — |
| Kavita Patel | 4,571 | 3,414 | 76,250 | 1,751 | 4,538 | 76,250 | — | — | — |
| Robert R Ruffolo | 5,803 | 31,606 | 495,347 | 683 | 4,538 | 76,250 | — | — | — |
| Eric D. Shaff | 5,639 | 3,414 | 76,250 | 683 | 4,538 | 76,250 | — | — | — |
| All executive officer and directors as a group (11 persons) | 170,237 | 80,766 | 1,353,635 | 160,125 | 84,627 | 9,001,309 | 4,552 | 67,915 | 508,185 |

41.     In addition, certain employment agreements with certain Sigilon executives entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them significant sums of money, compensation not shared by Plaintiff, as follows:

| Name | Cash ($)(1) | Equity ($)(2) | Benefits($)(3) | Total ($) |
|---|---|---|---|---|
| Rogerio Vivaldi Coelho | 1,481,973 | 72,430 | 45,107 | 1,599,510 |
| Philip Ashton-Rickardt | 472,416 | 6,634 | 22,554 | 501,604 |

42.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     Thus, while the Proposed Transaction is not in the best interests of Sigilon, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

44.     On July 13, 2023, the Sigilon Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

45.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

   a.   Sufficient information as to why the majority of the merger consideration is not guaranteed;

   a.   Adequate disclosure regarding the committee of independent board members, including the extent of powers of such a committee in evaluating the Proposed Transaction and whether that committee was empowered to veto a potential transaction not in the best interest of common shareholders;

b.   Adequate disclosure regarding Canaccord, including what specific role this entity had in the sales process as well as the specific amount of consideration paid to or owed to this entity for such services performed;

c.   Whether the terms of any confidentiality agreements entered during the sales process between Sigilon on the one hand, and any other third party (including Eli Lilly), if any, on the other hand, differed from one another, and if so, in what way;

d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Eli Lilly) throughout the sales process, if any, would fall away; and

e.   The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Sigilon Financial Projections*

46.   The Recommendation Statement fails to provide material information concerning financial projections for Sigilon provided by Sigilon management and relied upon by Lazard in its analyses.

47.   Notably, in its fairness opinion, Lazard indicates that it reviewed, "various financial forecasts and other data provided to us by the Company relating to the business of the Company, including wind down forecasts prepared by the management of the Company."

48.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Sigilon management provided to the Board and Lazard. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

49.     With regard to the *Revenue Forecasts – Probability Adjusted* prepared by Sigilon management and provided to Lazard, the Recommendation Statement fails to disclose material line items for important metrics as follows:

      a.   Collaboration Revenue – Lilly, including all underlying inputs, metrics, and assumptions, including specifically: Royalty Obligations;

      b.   Gross Profit, including all underlying inputs, metrics, and assumptions, including specifically: cost of goods sold;

      c.   EBIT, including all underlying inputs, metrics, and assumptions, including specifically: interest and taxes;

      d.   NOPAT, including all underlying inputs, metrics, and assumptions, including specifically: net operating profit and tax; and

      e.   Unlevered FCF, including the specific definition used and all underlying inputs, metrics, and assumptions therein.

50.     With regard to the *Revenue Forecasts – Non-Probability Adjusted* prepared by Sigilon management and provided to Lazard, the Recommendation Statement fails to disclose material line items for important metrics as follows:

    a.   Collaboration Revenue – Lilly, including all underlying inputs, metrics, and assumptions, including specifically: Royalty Obligations;

    b.   EBIT, including all underlying inputs, metrics, and assumptions, including specifically: interest and taxes;

    c.   NOPAT, including all underlying inputs, metrics, and assumptions, including specifically: net operating profit and tax; and

    d.   Unlevered FCF, including the specific definition used and all underlying inputs, metrics, and assumptions therein.

51.    The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all sets of provided projections.

52.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

53.    Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Lazard's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

54.    In the Recommendation Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to

include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

55.     With respect to the *Analysis of Consideration*, the Recommendation Statement fails to disclose the following:

   a.   The specific metrics, inputs, and assumptions used to determine the discount rate of 14%; and

   b.   Parent's cost of debt utilized, and the specific inputs and assumptions used to determine the same.

56.     With respect to the *Discounted Cash Flow Analysis – Standalone Basis*, the Recommendation Statement fails to disclose the following:

   a.   The specific bases upon which the decision to not include a terminal value was made;

   b.   The specific metrics, inputs, and assumptions used to determine the utilized discount rate of 13.0% to 15.0%;

   c.   The Company's weighted average cost of capital utilized, and the specific metrics, inputs, and assumptions used to determine it;

   d.   The specific "Company-specific metrics and metrics for the financial markets" utilized, and the metrics, inputs, and assumptions used to determine them; and

   e.   The specific metrics, inputs, and assumptions used to determine the implied per share equity value reference range of $14.65 to $15.25.

57.     With respect to the *Discounted Cash Flow - Wind Down Scenario*, the Recommendation Statement fails to disclose the following:

a.   The specific metrics, inputs, and assumptions used to determine a 50% reduction in all programs with Parent;

b.   The estimated wind-down charges;

c.   The specific bases upon which the decision to not include a terminal value was made;

d.   The specific metrics, inputs, and assumptions used to determine the utilized discount rates ranging from 13.0% to 15.0%;

e.   The Company's weighted average cost of capital utilized, and the specific metrics, inputs, and assumptions used to determine it;

f.   The specific "Company-specific metrics and metrics for the financial markets" utilized, and the metrics, inputs, and assumptions used to determine them;

g.   The specific metrics, inputs, and assumptions used to determine the implied per share equity value reference range of $12.65 to $16.65.

58.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

59.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

**FIRST COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

60.   Plaintiff repeats all previous allegations as if set forth in full herein.

61.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

62.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

63.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

65.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

66.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

67.     Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

68.      Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

69.      Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

70.      Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

71.      SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

72.      Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

73.      The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

74.      Plaintiff has no adequate remedy at law.

## THIRD COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

75.     Plaintiff repeats all previous allegations as if set forth in full herein.

76.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

77.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

78.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Sigilon' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

79.     The Individual Defendants acted as controlling persons of Sigilon within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Sigilon to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Sigilon and all of its employees.  As alleged above, Sigilon is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 21, 2023                    **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*